UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
SHANA EDME,

                   Plaintiff,                          **<u>MEMORANDUM AND ORDER</u>**
                                                   12 CV 3306 (DRH) (GRB)

               -against-

INTERNET BRANDS, INC., d/b/a
MODELMAYHEM.COM, MEDIA
TAKEOUT.COM, LLC, and
BOSSIP, d/b/a BOSSIP.COM,

                   Defendants.
------------------------------------------------------X
**APPEARANCES:**

**DAVID GORDON, ESQ.**
Attorney for Plaintiff
P.O. Box 231
Highmount, NY 12441

**FOLEY & LARDNER LLP**
Attorneys for Defendant Bossip.com
90 Park Avenue
New York, NY 10016
By:     Yonaton Aronoff, Esq.

**HENRY R. KAUFMAN, P.C.**
Attorneys for Defendant Media Takeout.com LLC
60 East 42nd Street, 47th Floor
New York, NY 10165
By:     Henry R. Kaufman, Esq.
           Michael K. Cantwell, Esq.

**ERVIN COHEN & JESSUP LLC**
Attorneys for Defendant Internet Brands, Inc.
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212
By:     Patrick A. Fraioli, Esq.

**iGENERAL COUNSEL, P.C.**
Attorneys for Defendant Internet Brands, Inc.
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212

By:    Wendy E. Giberti, Esq.

**HURLEY, Senior District Judge:**

Shana Edme ("Edme" or "plaintiff") commenced this action against Internet Brands, Inc. d/b/a Modelmayhem.com ("Modelmayhem"), Bossip d/b/a Bossip.com ("Bossip"), and Media Takeout.com, LLC ("Media Takeout") (collectively, "defendants") for purportedly violating her right to privacy under New York Civil Rights Law §§ 50 and 51.  Presently before the Court is defendant Modelmayhem's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction and all defendants' motions to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim.  For the reasons set forth below, the Rule 12(b)(6) motions by Modelmayhem and Bossip are granted while Media Takeout's motion is denied.

## *BACKGROUND*

The following facts are taken from the Amended Complaint and are presumed true for purposes of these motions.

In 2008, Edme joined Modelmayhem – a modeling industry website with over 60,000 members nationwide – to market her services and further her modeling career.  (Am. Compl. ¶¶ 6, 15.)  Modelmayhem is owned and operated by Internet Brands.  (*Id.* ¶ 7.)  At all relevant times, Modelmayhem represented that its privacy policy would allow for a member's picture portfolio to be viewed by others if that member gave explicit permission.  (*Id.* ¶ 17.)  Plaintiff never gave Modelmayhem permission for her portfolio, which contained several photographs of her modeling lingerie, to be viewed or disseminated.  (*Id.* ¶¶ 18, 20.)

Edme states that on or before August 4, 2011, Modelmayhem "released several pictures of the [p]laintiff's lingerie photographs to the online media." (Am. Compl. ¶ 19.) On August 4, 2011, Edme discovered that her lingerie photographs from her Modelmayhem account had been republished on Media Takeout, a blog-style gossip website which devotes considerable time publishing posts about famous women. (*Id.* ¶¶ 8, 10, 21.) A false story identifying Edme as celebrity Kimora Lee Simmons' "lingerie model" sister was posted on Media Takeout's front page and was accompanied by several of Edme's lingerie photographs.[1] (*Id.* ¶¶ 21-22.) The article allowed for it to be emailed or republished on various social networking sites. (*Id.* ¶¶ 23-24.) Following the article and photographs were "several hundred email comments from people nationwide who had seen the photos and read the article – many of the comments being derogatory and sexual in nature." (*Id.* ¶ 26.)

Later that day, Bossip – a website featuring African-American celebrity gossip and entertainment news – also posted a story about plaintiff and Kimora Lee Simons with an accompanying lingerie photograph from plaintiff's Modelmayhem account. (Am. Compl. ¶¶ 12, 27-28.) Bossip's story featured the following headline: **Rumor Control: Kimora Lee Simmons Says 'That Lil Trashy Lingerie Wearing Heffa Is NOT My Sister.'"** (*Id.* ¶ 27.) Bossip's article debunked Media Takeout's report that Edme is the sister of Kimora Lee

---

[1]  The article posted by Media Takeout proclaimed to its readers:

> "WOWZERS!! WE GOT PICS OF KIMORA LEE SIMMONS' YOUNGER SISTER . . . IN LINGERIE!! (LOOKS LIKE KIMMY . . . ONLY THICK) Her name is Shana Lee . . . and she looks just like her big sis Kimmy . . . August 4, 2011. Kimmy's sister's name is Shana and she's looking to get into the modeling world."

(Am. Compl. ¶ 22.)

Simons.[2]  (*Id.* ¶¶ 27-28.)  Similar to the article posted by Media Takeout, Bossip's article was followed by numerous online responses.  (*Id.* ¶ 29.)  These articles spread throughout the internet and were republished by websites such as "Huffingtonpost.com," "Hollywood.com," and others. (*Id.* ¶ 32.)

Based on the above, Edme commenced this action by filing a Complaint on July 3, 2012. Plaintiff brings one claim against the defendants, namely that they violated her right to privacy under Sections 50 and 51 of the New York Civil Rights Law.  In response, all three defendants have moved to dismiss the Amended Complaint.  First, Modelmayhem alleges that this action should be dismissed as plaintiff contractually agreed to submit any and all disputes with it to courts of proper jurisdiction in California.   To the extent this argument is rejected, Modelmayhem also contends that plaintiff fails to state a claim for invasion of privacy as she does not allege that it used her photos, likeness, or name for commercial purposes.[3]  As for defendants Media Takeout and Bossip, they argue that plaintiff's invasion of privacy claim fails to state a claim as their use of plaintiff's photographs and name fall under the newsworthiness

---

[2]        The article posted by Bossip stated the following:

> <u>Kimora Lee Simmons</u> took the time out today to address some lies floatin' around the internets that she has a lil lingerie modeling sister named Shana Lee . . . Via <u>her blog</u>: Today, it was brought to my attention that there is recently published story on the internet claiming I have a younger sister who is a model.  This story is not true as I do not have a sister.  I felt the need to clear up any confusion or questions.

(Am. Compl. ¶ 27.)

[3]        Modelmayhem also argues that plaintiff's claim is barred by the Communications Decency Act, codified at 47 U.S.C. § 230(c).  The Court need not reach this argument.

exception and therefore cannot be considered a use for commercial purposes.  These arguments
will be addressed in turn.

## *DISCUSSION*

### I.   *Modelmayhem's Motion to Dismiss Pursuant to a Forum Selection Clause[4]*

#### A.   *Legal Standard*

Neither the Supreme Court nor the Second Circuit has "specifically designated a single
clause of Rule 12(b) as the 'proper procedural mechanism to request a dismissal of a suit based
upon a valid forum selection clause.'" *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d
Cir. 2006) (quoting *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir.
1997)); *see also CfirstClass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 326-27 (S.D.N.Y.
2008) ("There is a split of authority in the Second Circuit regarding the appropriate procedural
mechanism by which to enforce a forum selection clause.").  Here, Modelmayhem styles its
motion under Rule 12(b)(2) for lack of personal jurisdiction.  Although the Second Circuit has
"refused to pigeon-hole [forum selection clause] claims into a particular clause of Rule 12(b),"
*Asoma Corp.*, 467 F.3d at 822, Rule 12(b)(2) has not been one of the subsections utilized by
movants seeking to dismiss an action based on a forum selection clause.[5]  *See TradeComet.com
LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) ("We have affirmed judgments that

---

[4]      It is well-settled that a court should resolve issues of jurisdiction and venue before
addressing merits-based arguments.  S*ee Arrowsmith v. United Press In'tl*, 320 F.2d 219, 221
(2d Cir. 1963).  Therefore, the Court will first address Modelmayhem's motion to dismiss
pursuant to a forum selection clause.

[5]      Instead, the Court has come across cases where plaintiffs have opposed a motion to
dismiss for lack of personal jurisdiction under Rule 12(b)(2) by relying on a forum selection
clause.  *See, e.g.*, *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 152-53 (2d
Cir. 2012); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 615 (S.D.N.Y.
2008).

enforced forum selection clauses by dismissing cases for lack of subject matter jurisdiction under Rule 12(b)(1), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6)" (citations omitted)); *see also Nippon Express U.S.A. (Ill.), Inc. v. M/V Chang Jiang Bridge*, 2007 WL 4457033, at *3 (S.D.N.Y. Dec. 13, 2007) ("Courts in this Circuit appear to prefer Rule 12(b)(3) as the procedural device used to enforce a forum selection clause."). While the applicable case law does not prevent the Court from considering Modelmayhem's motion under Rule 12(b)(2), for sake of clarity and consistent with the preference in this Circuit, the Court will rely on Rule 12(b)(3) to assess the motion.[6]

When a defendant challenges the venue of the court, the plaintiff has the burden to establish that venue is proper. *See Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011). Courts may consider materials outside the pleadings when deciding a motion for improper venue. *See e.g.*, *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012); *TradeComet.com LLC*, 693 F. Supp. 2d at 375 n.3. "If a court chooses to rely on pleadings and affidavits" as opposed to conducting an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co.*, 417 F.3d at 355 (internal quotation marks, citation, and brackets omitted). In analyzing whether a plaintiff has made the requisite showing, courts "view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

---

[6]     Because the same standard of review is applied to a motion under Rule 12(b)(2) for lack of personal jurisdiction and a motion under Rule 12(b)(3) for improper venue, there is no practical difference between the two. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The Court, however, finds it wise to not further complicate the procedural landscape in this Circuit by entertaining the motion under Rule 12(b)(2).

### B.      *Enforceability of the Forum Selection Clause*

Modelmayhem claims that this case, as it relates to Modelmayhem, does not belong in the Eastern District of New York because the "Terms of Use" found on its website contains a forum selection clause.[7]  According to Modelmayhem, the Terms of Use are binding on Edme as a valid contract and, based on the forum selection clause within the "Terms of Use," California courts have exclusive jurisdiction over any and all disputes arising out of or related to the use of Modelmayhem's website.  The applicable portion of the provision in question reads as follows:

> If there is any claim or dispute about or involving the Model Mayhem Services, you agree that the claim or dispute will be governed by the laws of the State of California, United States of America, without regard to conflict of law provisions.  You agree to and hereby submit to exclusive personal jurisdiction and venue in the state and federal courts located in the County of Los Angeles, California and the Central District Court, California, respectively, with respect to any such matters, and you agree to waive any and all objections to jurisdiction and to venue.

(Pl.'s Opp'n, Ex. B.)

The Second Circuit has established a four part analysis for courts to consider when determining whether to dismiss an action based on a forum selection clause.  *See S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010); *Phillips*, 494 F.3d at 383.  The first three parts of the analysis are as follows:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so.  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause."

---

[7]      Although Modelmayhem refers to what is posted on its website as "Terms and Conditions," the actual title is "Terms of Use."  As such, the Court will only refer to the latter.

*Phillips*, 494 F.3d at 383 (citations omitted). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable" and the court should proceed to the fourth inquiry, which is "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, L. Ed. 2d 513 (1972)). Modelmayhem's failure to reference the applicable four part analysis in this Circuit and articulate how its "Terms of Use" bound, and were reasonably communicated to, Edme is fatal to its argument for dismissal.[8]

The conclusory statement by Modelmayhem that "New York law specifically recognizes 'Terms and Conditions' posted on a website as a binding contract" (Modelmayhem's Mem. at 6) completely ignores the developing discussion within this Circuit (and courts nationwide) regarding what actions by an internet user manifests one's asset to contractual terms found on a website. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). "Mutual manifestation of assent, whether by written or spoken word or by conduct" is one such principle. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002). As Judge Johnson of this District previously explained:

> On the internet, the primary means of forming a contract are the so-called "clickwrap" (or "click-through") agreements, in which website users typically click an "I agree" box after being presented with a list of terms and conditions of use, and the "browsewrap"

---

[8]     Whether intentional or unintentional, Modelmayhem's papers only address the third inquiry, namely whether the claims involved in this action are subject to the forum selection clause. (Modelmayhem's Mem. at 7.)

> agreements, where website terms and conditions of use are posted
> on the website typically as a hyperlink at the bottom of the screen.

*Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009). A browsewrap

agreement "usually involves a disclaimer that by visiting the website–something that the user has

already done–the user agrees to the Terms of Use not listed on the site itself but available only

be clicking a hyperlink." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012).

Thus, in deciding the validity of browsewrap agreements, "courts consider primarily whether a

website user has actual or constructive knowledge of a site's terms and conditions prior to using

the site." *Hines*, 668 F. Supp. 2d at 367 (internal quotation marks and citation omitted).

        In this case, Modelmayhem fails to explain how Edme bound itself to the Terms of Use,

including how users of its website were advised of such terms.   For example, (1) a user could

have agreed to the Terms of Use by clicking an "I agree" box before creating an account and

gaining access to the website's services;[9] (2) the Terms of Use could have appeared on the

website's homepage;[10] (3) the Terms of Use could have been accessible from a hyperlink located

on the homepage; (4) the Terms of Use could have been buried somewhere else on the website;

or (5) some other combination or scenario not otherwise contemplated by the Court.  The only

evidence presented on this issue is a screenshot of the Terms of Use.  The Court, however,

---

[9]      This scenario appears unlikely based on the following clause in the Terms of Use: "By
accessing the Model Mayhem Services, you accept, without limitation or qualification, the
following Terms of Use . . . .  If you do NOT accept the Terms of Use . . . then please
discontinue your use of the Site and the Model Mayhem Services."  (Pl.'s Opp'n, Ex. B.)  Based
on this language, it does not appear that a clickwrap agreement or some variation of the same
was utilized by Modelmayhem.

[10]      This scenario also seems doubtful based on the web address where the Terms of Use can
be found.  The web address for the Terms of Use is: "https://secure.modelmayhem.com/help/
rules/terms-of-use."  Based on the numerous backslashes following "modelmayhem.com,"
which is the web address for Modelmayhem's homepage, it appears that the Terms of Use were
not located on the homepage.

cannot glean solely from this screenshot how the Terms of Use were presented to users of the Modelmayhem website.

The circumstances surrounding how Modelmayhem's Terms of Use were exhibited to its users is determinative on the issue of whether Edme had actual or constructive notice of the terms and condition, including whether the forum selection clause was reasonably communicated to her.  *Compare Specht*, 306 F.3d at 32 (concluding that a provision that a website user would not encounter until he scrolled down multiple screens was not enforceable because "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms") *and Hines*, 668 F. Supp. 2d at 368 (holding that forum selection clause was not reasonably communicated where "Defendant failed to explain how Plaintiff and its other customers were 'advised' of the Terms and Conditions, or to cite a single case that suggests that merely posting such terms on a different part of a website constitutes reasonable communication of a forum selection clause") *with Zaltz v. JDate*, --- F. Supp. 2d ----, 2013 WL 3369073, at *7-8 (E.D.N.Y. 2013) (finding that "plaintiff assented to Jdate.com's Terms and Conditions of Service, meaning that the forum selection clause contained therein was, in fact, reasonably communicated to her" since plaintiff "did not need to scroll or change screens in order to be advised of the Terms and Conditions; the existence of, and need to accept and consent to, the Terms and Conditions of Service was readily visible") *and Fteja*, 841 F. Supp. 2d at 840-41 (concluding that because plaintiff was "informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences," defendant's Terms of Use were "reasonably communicated").  Without such information and evidence, the Court is unable to conclude that the Terms of Use were binding on plaintiff and that the forum selection clause – contained

within the Terms of Use – were reasonably communicated to plaintiff.  Accordingly, the Court

denies Modelmayhem's motion to dismiss on the basis that the forum selection clause contained

in its Terms of Use is enforceable.

## II.     *Motion to Dismiss for Failure to State a Claim by all Defendants*

### A.     *Legal Standard*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court,

however, has clarified the pleading standard applicable in evaluating a motion to dismiss under

Rule 12(b)(6).

First, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d

929 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 78

S. Ct. 99, 2 L. Ed. 2d 80 (1957) that "'a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'"  *Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S.

at 45-46).  To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation
> to provide grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level on the
> assumption that all allegations in the complaint are true.

*Id.* at 555 (internal quotation marks, citations, and alterations omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss.  First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  The Supreme Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (citations omitted) (quoting *Twombly*, 550 U.S. at 556-57); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

**B.**     *Invasion of Privacy*

As previously mentioned, plaintiff's sole cause of action is for invasion of privacy under

Sections 50 and 51 of the New York Civil Rights Law.  It is well-established that "New York

does not recognize a common-law right to privacy." *Messenger v. Gruner + Jahr Printing &*

*Publ'g*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 727 N.E.2d 549 (2000); *accord Hurwitz v. United*

*States*, 884 F.2d 684, 687 (2d Cir. 1989).  Instead, the New York legislature enacted Sections 50

and 51 which "provide a limited statutory right of privacy."  *Messenger*, 94 N.Y.2d at 441.

Section 51 states that

> [a]ny person whose name, portrait, picture or voice is used within
> this state for advertising purposes or for the purpose of trade
> without consent first obtained . . . may maintain an equitable action
> . . . against the person, firm or corporation so using his name,
> portrait, picture or voice, to prevent and restrain the use thereof;
> and may also sue and recover damages for any injuries sustained
> by reason of such use . . . .

N.Y. Civ. Rights Law § 51.  This section "w[as] drafted narrowly to encompass only the

commercial use of an individual's name or likeness and no more." *Arrington v. N.Y. Times Co.*,

55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982).  Thus, to state a claim under

Section 51, a plaintiff must allege: "(1) the use of his name, portrait, or likeness; (2) for

'advertising purposes or for the purpose of trade;' (3) without written permission."[11] *Candelaria*

*v. Spurlock*, 2008 WL 2640471, at *1 (E.D.N.Y. July 3, 2008); *accord Titan Sports, Inc. v.*

*Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989).

---

[11]     Section 51's criminal counterpart, Section 50, makes it a misdemeanor for a person to "use[] for advertising purposes, or for the purpose of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . ."  N.Y. Civ. Rights Law § 50.  Although plaintiff brings suit under Sections 50 and 51, the Court finds Section 50 inapplicable as plaintiff is not seeking criminal penalties.

While Section 51 does not define "purposes of trade," some courts have looked to whether the use "attracted customers to defendant and/or helped defendant make a profit." *Rall v. Hellman*, 284 A.D.2d 113, 114, 726 N.Y.S.2d 629 (1st Dep't 2001); *see also Kane v. Orange Cnty. Publ'ns*, 232 A.D.2d 526, 527, 649 N.Y.S.2d 23 (2d Dep't 1996).  Nevertheless, "courts have consistently refused to construe [purposes of trade] as encompassing publications concerning newsworthy events or matters of public interest." *Finger v. Omni Publ'ns Int'l Ltd.*, 77 N.Y.2d 138, 141-42, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990).  "This is both a matter of legislative intent and a reflection of constitutional values in the area of free speech and free press." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993).

The concept of "newsworthiness" is applied broadly, and includes "not only descriptions of actual events, but also articles concerning political happenings, social trends or any subject of public interest." *Messenger*, 94 N.Y.2d at 441-42; *see also Lemerond v. Twentieth Century Fox Film Corp.* 2008 WL 918579, at *2 (S.D.N.Y. Mar. 31, 2008) (noting that "'public interest' and 'newsworthy' have been defined in [the] most liberal and far reaching terms." (internal quotation marks and citation omitted)).  An item's newsworthiness "depends solely on the content of the article–not the publisher's motive to increase circulation." *Messenger*, 94 N.Y.2d at 442 (internal quotation marks and citation omitted).  Courts have noted that "questions of 'newsworthiness' are better left to reasonable editorial judgment and discretion." *Finger*, 77 N.Y.2d at 143.

Notwithstanding the newsworthiness exception, there are two scenarios where a Section 51 claim may proceed "even where the use is in conjunction with a report on a matter of public interest." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 131 (2d Cir. 1984).  First, "in the rare case

of an article purporting to be newsworthy but in fact 'so infected with fiction, dramatization or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception,' this exception will not apply." *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) (quoting *Messenger*, 94 N.Y.2d at 446). Second, "where a plaintiff's picture is used to illustrate an article on a matter of public interest, there can be no liability under sections 50 and 51 unless the picture has no real relationship to the article or the article is an advertisement in disguise." *Messenger*, 94 N.Y.2d at 442-43. This is true "even where a plaintiff's photograph, when juxtaposed with an article, could reasonably have been viewed as falsifying or fictionalizing plaintiff's relation to the article." *Id* at 443.

Having recited the applicable law regarding one's statutory right to privacy, the Court now turns to the sole issue before it, whether defendants' use of plaintiff's name and photographs were for purposes of trade.[12]

### 1.    Media Takeout

Seeking to dismiss plaintiff's Amended Complaint, Media Takeout contends that it did not publish plaintiff's name or likeness for purposes of trade because "a news article reporting on a celebrity such as Kimora Lee Simmons involves a 'matter of public interest' and thus fits comfortably within the 'newsworthiness' exception." (Media Takeout Mem. at 7.) Media Takeout takes this position notwithstanding the errors contained in its article, namely identifying

---

[12]    Edme does not allege in the Amended Complaint that the use of her name and photographs were for advertising purposes. The only issue, therefore, concerns the question whether the plaintiff's use was for the purpose of trade.

plaintiff as Kimora Lee Simmons' sister.  In response, Edme argues that Media Takeout "published a story with [her] photos, which was, to say the least, crafted with a complete and reckless disregard for the truth as well as total falsification–and as such is not entitled to any defense of 'newsworthiness.'" (Pl.'s Opp'n at 3.)

At the outset, Media Takeout's contention that its article "reported on a celebrity" is greatly exaggerated.  The article included only pictures of the plaintiff, and the only text of substance discussed plaintiff's desire to get into the modeling world.  The article was devoid of any pictures or information about Kimora Lee Simmons.  In fact, the only reference to Kimora Lee Simmons was when the article misidentified plaintiff as Kimora's sister and commented how much the two looked alike.  Nevertheless, in today's society where celebrity gossip gets significant media coverage, this article can be considered, for better or worse, a matter of public interest merely because its subject matter involved a celebrity.

While it is true that the use of a plaintiff's photograph to illustrate a newsworthy article may not provide a basis for liability under Section 51, the actionable conduct in this case includes the falsities surrounding the use of Edme's name and likeness in the article itself – not some false implication created by the use of her photograph when juxtaposed with an otherwise newsworthy article.  The Amended Complaint alleges that Media Takeout violated plaintiff's right to privacy not only by publishing her photographs but also using her identify as part of its fictional story.  (*See* Am. Compl. ¶¶ 21-22, 38-40.)  Because this action also involves the use of plaintiff's name in the article itself, Media Takeout's contention that this case is merely one involving a  "misidentified photo" is misplaced, and the line of cases relied on by Media Takeout

regarding the use of a plaintiff's photograph for purposes of illustrating an otherwise newsworthy article are factually dissimilar. *See Messenger*, 94 N.Y.2d at 446 (explaining that there is "no inherent tension" between cases addressing the false use of plaintiff's photographs to illustrate a newsworthy article and cases involving a plaintiff's use in an article that contained substantial falsifications).

Plaintiff's name and photographs were used in Media Takeout's under fifty-word article to convey to its readers that plaintiff was the sister of Kimora Lee Simmons; a proclamation which was undisputedly false. In light of the factual errors contained in Media Takeout's article, it could lose the newsworthiness privilege that otherwise extends to matters of public interest if it is ultimately determined that the article was materially and substantially false. *See Lerman,* 745 F.2d at 132 ("[A] plaintiff may claim that defendant forfeited the privilege for reporting matters on which the public has the right to be informed by proving that the defendant's use was infected with material and substantial fiction or falsity."); *Davis v. High Soc'y Magazine*, 90 A.D.2d 374, 381, 457 N.Y.S.2d 308 (2d Dep't 1982) ("[A] finding that a publication was for the purposes of trade may be predicated on either the lack of a reasonable connection between the use and a matter of public interest, or on a finding that the use contained substantial fictionalization or falsification.").

At this juncture, the Court cannot conclude as a matter of law that Media Takeout is shielded from Section 51 liability under the newsworthiness exception. This is not to say that Edme will be successful on her Section 51 claim. Even where a use is associated with an item considered to be of public interest and the use was tainted with material falsity, a "plaintiff must

17

prove that defendant acted with some degree of fault regarding the fictionalization or falsification." *Lerman*, 745 F.2d at 132.  Nevertheless, plaintiff's invasion of privacy claim under Section 51 survives Media Takeout's motion to dismiss.

## 2.    Bossip

Similar to Media Takeout, Bossip contends that plaintiff's Section 51 claim fails as a matter of law in that its use of plaintiff's photographs fall within the well-recognized newsworthy exception.  While Bossip also improperly limits the case to just the use of plaintiff's photographs, it is correct that Edme fails to state a claim against it.

Plaintiff's claim against Bossip is identical to Media Takeout; it published pictures of plaintiff and used plaintiff's identity and pictures as part of a fictional story without her consent. (*See* Am. Compl. ¶¶ 38-40.)  However, what differentiates Bossip's article from Media Takeout's article is that the factual allegations against Bossip, when accepted as true, do not allege that the use of plaintiff's name and photographs contained any substantial falsification. The sum and substance of Bossip's article was that despite previous reports that plaintiff was the sister of Kimora Lee Simmons, such reports were debunked by a statement from Kimora herself. Despite the crudeness in which Bossip conveyed this message, the fact of the matter is that the article was truthful regarding the plaintiff and, based on the content, a matter of public interest. Thus, Bossip's use of plaintiff's name and photographs fall within the newsworthiness exception.[13]

---

[13]    Even if the Court isolated just the use of plaintiff's pictures, Edme would still fail to state a claim as the pictures have a real relationship to a newsworthy article.  *Messenger*, 94 N.Y.2d at 442-43.

Plaintiff's contention that Bossip is not entitled to the newsworthiness exception based on a statement the article falsely attributes to Kimora Lee Simmons is unavailing.  Aside from the fact that this allegation is not contained in the Amended Complaint, whether or not Kimora Lee Simmons stated "that lil trashy lingerie wearing heffa is not my sister" is irrelevant to the newsworthiness exception as it has no bearing on how Bossip violated Edme's privacy rights by using her name and photographs.  *See Lerman,* 745 F.2d at 132 (noting that the newsworthiness privilege may be "forfeited" when the "defendant's use" of plaintiff's name and pictures were materially and substantially false).

In sum, Bossip's use of plaintiff's name and photographs are covered under the newsworthiness exception.  Because Edme cannot plead a plausible invasion of privacy claim against Bossip, her Section 51 claim is dismissed with prejudice.

### 3.   **Modelmayhem**

Finally, Modelmayhem contends that Edme fails to state a claim against it for invasion of privacy as she has not alleged that it used plaintiff's photographs for commercial purposes. Specifically, Modelmayhem claims that plaintiff "has not alleged that [it] realized any commercial gain or did in fact capitalize on her specific images."  (Modelmayhem Mem. at 9.)

In the Amended Complaint, plaintiff alleges that: (1) Modelmayhem "represented that it had a privacy policy that would only allow for a member's picture portfolio to be viewed by other persons if that member gave explicit permission allowing for such viewing" (Am Compl. ¶ 17); (2) she never gave permission for her picture portfolio to be viewed which included photographs of plaintiff modeling lingerie in 2008 (*id.* ¶ 18); and (3) on or before August 4,

19

2011, Modelmayhem released several pictures of plaintiff modeling lingerie to the online media without her permission (*id.* ¶¶ 19-20).  Absent from the Amended Complaint, however, is the necessary allegation that Modelmayhem's use of plaintiff's photographs were for commercial purposes.  *See Arrington*, 55 N.Y.2d at 439 (determining that Section 51 "encompass[es] only the commercial use of an individual's name or likeness and no more").  In other words, nowhere does plaintiff allege that Modelmayhem's use of her photographs attracted customers to its website or somehow made a profit off of her photographs.  *See Rall*, 284 A.D.2d at 114.

Notwithstanding the lack of commercial use allegations against Modelmayhem in the Amended Complaint, Edme contends that Section 51 does not absolve Modelmayhem from liability since it provided copies of plaintiff's photographs to another entity who then subsequently published those images in violation of Section 51.  (*See* Pl.'s Opp'n at 4.)  In making this contention, plaintiff fails to cite to a single case where a court allowed such a basis for liability to go forward.  The Court has not come across such an instance either.  More importantly, the language of Section 51 does not support her assertion.  Therefore, the Court rejects this argument and finds that  plaintiff has not pled a plausible Section 51 claim against Modelmayhem.  Because plaintiff 's theory of liability fails as a matter of law, her Section 51 claim against Modelmayhem is dismissed with prejudice.

### *CONCLUSION*

For the reasons set forth above, the motions to dismiss for failure to state a claim by Modelmayhem and Bossip are granted while Media Takeout's motion to dismiss is denied.  Because this action will proceed against Media Takeout, it is respectfully referred to Magistrate

Judge Brown for discovery and pretrial supervision.

**SO ORDERED.**

Dated: Central Islip, New York
        September 16, 2013

                                   /s/
                              Denis R. Hurley
                              Unites States District Judge